# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**LYNNE MARIE TURVILLE**,<br><br>Debtor. | Case No. **05-62447-13** |
| **LYNNE MARIE TURVILLE**,<br><br>Plaintiff.<br><br>-vs-<br><br>**CORNERSTONE MORTGAGE COMPANY**, **CAROLE L TURVILLE**, and **JOSEPH PETER AMATO**,<br><br>Defendants. | Adv No. **06-00100** |

## MEMORANDUM OF DECISION

At Butte in said District this 9th day of March, 2007.

On August 2, 2006, Plaintiff Lynne M. Turville ("Lynne"), represented by D. Randy Winner, of Great Falls, Montana, filed this adversary proceeding. Defendant Cornerstone Mortgage Company ("Cornerstone"), represented by Matthew Kolling of Dickenson, North Dakota, filed an answer to the complaint on September 15, 2006. This Court issued on October 4, 2006, a pretrial scheduling order setting this proceeding for trial on January 25, 2007. After summonses were returned, Plaintiff moved for entries of default against Defendants Carole L. Turville ("Carole") and Joseph Peter Amato ("Joseph"). The Clerk of Court entered such

1

defaults against Defendants Carole L. Turville and Joseph Peter Amato on November 21, 2006. Plaintiff has not filed applications for the entries of default judgments against Defendants Carole L. Turville and Joseph Peter Amato.

Lynne and Cornerstone filed a stipulation of facts and exhibits on January 17, 2007. On the same date, they filed a proposed pretrial order together with exhibits. The Court approved the pretrial order on January 18, 2007, and based on a stipulation of the parties, the Court vacated the January 25, 2007, trial setting. Based upon the stipulation and the approved pretrial order, Exhibits ("Ex.") B, C, D, E, F, G, and H[1] are admitted. The Court directed the parties to file briefs on or before February 16, 2007. The parties have filed their respective briefs and this matter is ready for a decision. This memorandum of decision contains the Court's findings of fact and conclusions of law. As is more fully discussed below, Debtor has standing to quiet title the subject property ("property") in her name, but Debtor may not avoid the lien held by Cornerstone and is subject to the terms and conditions of the note and deed of trust.

The Court's jurisdiction over this matter arises under 28 U.S.C. § 1334 and 11 U.S.C. § 105. This adversary proceeding is a core proceeding under 28 U.S.C. 157. The Court's consideration of Lynne's interest in the property and the validity of Cornerstone's deed of trust are governed by state law. *Farrey v. Sanderfoot*, 500 U.S. 291, 299, 111 S.Ct. 1825 (1991), *Board of Trade of City of Chicago v. Johnson* 264 U.S. 1, 10, 44 S.Ct. 232 (1924), *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917 (1886).

---

[1] Exhibits A and B as contained in the stipulation and the approved pretrial order disclose a deed identified as Exhibit B for both exhibits. The Court is unaware as to what Exhibit A is and the agreed facts in the pretrial order reference Exhibits A and B for the same identified facts in paragraph 3 of the agreed facts.

## FACTS

Pursuant to the stipulation filed January 17, 2007, and the pretrial order filed on January 17, 2007, and approved on January 18, 2007, the parties have agreed to the following facts and have stipulated to the admission of the designated exhibits:

1) The property at issue in this proceeding is a single family dwelling located at 1100 11th Street NW, Cascade County, Great Falls, Montana, and more particularly described as follows:

> Lot 4, excepting an area 3 feet in width along the southerly boundary of said lot, Block 3, VALLEYVIEW HOMES, SECTION 1, an addition to the City of Great Falls, Cascade County, Montana, according to the official map or plat thereof on file and of record in the office of the Clerk and Recorder of said County.

2) On May 2, 1987 Joseph Amato and Lynne Turville were married in Cascade County, Montana.

3) On August 27, 1993, Joseph Amato purchased the residence located at 1100 11th Avenue NW, Great Falls, Montana, and Joseph and Lynne Amato moved into the residence immediately thereafter (Exhibits "A" and "B").

4) Joseph Amato financed the purchase of the residence by means of a loan from Wells Fargo Mortgage. Joseph Amato secured his Promissory Note by executing a Deed of Trust dated August 30, 1993 in favor of Wells Fargo Mortgage (Exhibit "C"). Lynne Amato did not participate as a party to this transaction because of her credit history.

5) Joseph Amato and Lynne Amato lived in the residence until the parties separated in March, 1995. By agreement between the parties, Lynne Amato remained in the residence and began making the house payments.

6) Lynne Amato was divorced from her husband pursuant to the Decree of Dissolution entered in the Eighth Judicial District Court, Cascade County, Montana, Cause No. DCR-95-436, dated the 13th day of September, 1995 (Exhibit "D").

7) Pursuant to the Dissolution Agreement and incorporated into the Decree, Lynne Amato was awarded the parties' residence located at 1100 11th Street Northwest, Great Falls, Montana.

8) Pursuant to the Divorce Decree, Joseph Amato was ordered to quitclaim his interest in the family home to Lynne Amato, now Lynne Turville. Joseph Amato failed to comply with this portion of the Dissolution Decree.

9) From 1995 until the present, Lynne Turville has lived in the property as her principal residence. Lynne periodically had trouble remaining current on the house payment. These problems were exacerbated by the fact that no representative of Wells Fargo Mortgage would speak with her because her name was not on the loan, and Joseph Amato had never transferred the property to her. In late 2003 lender Wells Fargo Mortgage instituted a foreclosure proceeding pursuant to the terms of Montana's Small Tract Financing Act (Exhibit "E").

10) Prior to the March 31, 2004 sale, Lynne Turville was able to reinstate the Wells Fargo Mortgage loan with funds derived in part from her 2003 federal tax refund and in part from a loan advanced by her mother, Carole L. Turville. As a consequence, the March 31, 2004 foreclosure sale was vacated.

11) To prevent further problems with the Wells Fargo loan, Carole Turville agreed to borrow enough money to retire the Wells Fargo Mortgage loan in its entirety. While Carole Turville had a sufficiently good credit score to qualify for a loan of this amount, she did not own any property to collateralize the loan.

12) On March 18, 2004 Joseph Amato executed a Quitclaim Deed transferring his ownership interest in the residence to Carole L. Turville (Exhibit "F"). The Quitclaim Deed was recorded in the Office of the Clerk and Recorder of Cascade County on August 25, 2004, as Document No. R0089502.

13) Based on the interest conveyed to her by the March 18, 2004 Quitclaim Deed, Carole L. Turville borrowed money from Cornerstone Mortgage Company in an amount sufficient to retire the lien of Wells Fargo Mortgage. Carole Turville secured her note by granting a Deed of Trust in favor of Cornerstone Mortgage Company (Exhibit "G ").

14) Neither the Dissolution Agreement nor the Dissolution Decree were recorded in the real property records in the Office of the Clerk and Recorder of Cascade County, Montana.

15) As part of the loan transaction with Carole Turville, Cornerstone Mortgage obtained a lender's title insurance policy with respect to the real property at issue in this action. (Exhibit "H").

## CONTENTIONS

Lynne is pursuing this litigation to quiet title in the property and to avoid Cornerstone's lien on the property. Lynne submits this contention on the grounds that the dissolution decree terminated Joseph's interest in the property, that Lynne owns the property and the quitclaim deed from Joseph to Carole transferred no ownership interest upon which Cornerstone's deed of trust could have been created and perfected.

Cornerstone contends that Joseph never quitclaimed any interest to Lynne and the dissolution agreement and decree were never recorded so no constructive notice was provided through the public records. When Joseph quitclaimed his interest to Carole, she became the

5

record title owner of the property. Cornerstone submits that it is a good faith encumbrancer for value without notice, so the deed of trust is not avoidable and Lynne is not entitled to quiet title the property in her name.

## LEGAL ISSUES

The parties state the legal issues as follows:

1. Does Lynne have standing to quiet title the property in her name?

2. Is Lynne entitled to avoid the deed of trust held by Cornerstone against the property and is she subject to the terms and conditions of the note held by Cornerstone and secured through the deed of trust by the property?

## DISCUSSION

**A. Standing.**

Pursuant to MONT. CODE ANN. ("MCA") § 70-28-101 and long standing case law in Montana, a person in possession and a person claiming an equitable interest are entitled to pursue a quiet title action. MCA § 70-28-101 provides:

> An action may be brought and prosecuted to final decree, judgment, or order by any person or persons, whether in actual possession or not, claiming title to real estate against any person or persons, both known and unknown, who claim or may claim any right, title, estate, or interest therein or lien or encumbrance thereon adverse to plaintiff's ownership or any cloud upon plaintiff's title thereto, whether such claim or possible claim be present or contingent, including any claim or possible claim of dower, inchoate or accrued, for the purpose of determining such claim or possible claim and quieting the title to said real estate.

Further, a person holding possession of property claiming an equitable title may pursue a quiet title action. *See Van Vranken v. Granite Court*, 35 Mont. 427, 90 P. 164, 166 (Mont. 1907); *Polson Sheep Co. v. Owen* 106 P.2d 181, 183, 110 Mont. 601, 601 (Mont. 1940). ". . . As

courts of equity, bankruptcy courts 'will look through the form to the substance of any particular transaction and may contrive new remedies when those in law are inadequate . . . .'" *Atkins v. Fiberglass Representatives, Inc. (In re Atkins)*, 134 B.R. 936, 939 (9th Cir. BAP 1992) (*quoting In re Global Western Development Corp.*, 759 F.2d 724, 727 (9th Cir. 1985)) (*quoting In re Madeline Marie Nursing Homes*, 694 F.2d 433, 436 (6th Cir. 1982)). Lynne has standing to pursue this adversary proceeding to quiet title the property in her name.

Additionally, Lynne's standing is buttressed by the Dissolution Agreement and Final Decree, Ex. D. Pursuant to paragraph 9, p. 5, of the Dissolution Agreement, entitled "DIVISION OF PROPERTY:"

> The parties have both real property and divide their personal property and have divided those and their debts pursuant to Exhibit A, attached hereto and by this reference incorporated herein. The parties specifically agree that the Court can and shall maintain jurisdiction for the purpose of any further Orders necessary to complete the division of any and all pensions, retirement funds, profit-sharing funds, or other retirement benefits of the parties.

Exhibit A to the Dissolution Agreement provides:

Property to become sole and exclusive property of WIFE:

> All personal property now in her possession; and one-half (½) interest in HUSBAND'S pension, or retirement, pursuant to this Agreement. WIFE will receive any and all interest in the home, located at 1100 11th Street, N.W., Great Falls, Montana.

> HUSBAND specifically agrees to sign, either contemporary with this Agreement, or as requested by WIFE, or her attorney, a quit Claim Deed to the family home. HUSBAND agrees that he was to have paid the debt on the family home since May, 1995, and failed to do so.

The Decree of Dissolution, part of Ex. D, provides: "3.  The parties hereto are specifically ordered to perform the provisions of the Dissolution Agreement[.]

The Dissolution Agreement further provides in paragraph 22:

> The property portions of this agreement, when executed, shall operate as a conveyance by the WIFE to the HUSBAND and as a conveyance by the HUSBAND to the WIFE of the enumerated items of property in the attached Exhibit [A].  Therefore, those items shall be the sole and separate property of the WIFE or HUSBAND as the case may be.

The Final Decree, a part of the Ex. D, further provides in paragraph 9, p. 6:

> 9.  Each party shall hereafter execute all instruments and documents necessary to carry out the above-stated distribution.  If a failure to so comply arises, this Decree shall constitute an actual grant, assignment, and conveyance of the property and rights in such manner which shall be necessary to effectuate the terms of this Decree.

Pursuant to the Dissolution Agreement as approved by the Final Decree, Ex. D, and MCA § 40-4-202(1), the State court equitably apportioned the property and assets belonging to Lynne and Joseph.  As noted in MCA § 40-4-202(3) "[e]ach spouse is considered to have a common ownership in marital property that vests immediately preceding the entry of the decree of dissolution . . . .  The extent of the vested interest must be determined and made final by the court pursuant to this section."  Further,

> [t]he division and apportionment of marital property caused by or incident to a decree of dissolution . . . is not a sale, exchange, transfer, or disposition of or dealing in property but is a division of the common ownership of the parties for the purpose of:
>
>> (a) the property laws of this state;
>> (b) the income tax laws of this state; and

      (c) the federal income tax laws.

Debtor argues in her brief that the reasoning in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825 (1991) and in *In re Weiss*, Case No. 04-63826 (Bankr. D. Mont. February 14, 2005, requires this Court to conclude that the Decree of Dissolution, Ex. D, "simultaneously extinguished all prior ownership interests in the home and created a new ownership interest vesting in debtor." Debtor's Brief, p. 2.[2] Pursuant to the cited cases and MCA § 40-4-202(3), State law provides that the "common ownership in marital property vests immediately preceding the entry of the decree of dissolution . . . ." The Court does not disagree with this portion of Debtor's argument. As noted above, this vesting of common ownership provides an additional basis upon which Lynne has standing to pursue this quiet title action to judicially place ownership of the property in her name.

    **B. Avoidance of Deed of Trust.**

Lynne's argument fails, however, to consider the impact the division of common ownership has on unknowing third parties. MCA § 70-21-101 provides "[a]n unrecorded instrument is valid as between the parties and those who have notice thereof." The Court, from the above passages from Ex. D, concludes that the excerpts clearly allowed Lynne to either pursue a court order conveying the property to her name or record Ex. D with the Cascade County Clerk and Recorder so constructive notice of her ownership interest would be available to

---

[2] By note 1, p. 2, to Debtor's Brief, Lynne acknowledges that the real issue in *Sanderfoot* and *Weiss* involves the termination and creation of ownership interests through a dissolution and the effect such interests have on a debtor's opportunity to avoid a lien pursuant to 11 U.S.C. § 522(f). As both parties note, a § 522(f) avoidance motion is not involved in this adversary proceeding.

all subsequent purchasers, mortgagees and other third parties. *See* MCA §§ 70-21-202(1), 70-21-301, -302. The State court entered the Final Decree and approved the Dissolution Agreement, Ex. D, on September 13, 1995. Lynne filed her bankruptcy case on July 26, 2005, nearly ten years later.

Joseph purchased the property from Corliss Ann Johnson on August 27, 1993. To purchase the property he obtained a purchase money loan from Wells Fargo Mortgage ("WFM") on August 30, 1993. Lynne did not participate as a party to the loan because of her credit history. Joseph and Lynne lived in the property until they separated in March 1995. Lynne continued living in the property after the separation and began making the loan payments secured by the property. Pursuant to the Dissolution Agreement, a part of Ex. D, Lynne received the property and Joseph was ordered to quitclaim his interest in the property to Lynne. As noted in the stipulated facts, Lynne periodically failed to make the loan payments to WFM. Additionally, representatives of WFM refused to visit with Lynne concerning issues associated with the loan as Joseph continued even after the dissolution to be the maker on the note and the grantor on the deed of trust.

Consequently, through nonpayment on the loan by either Joseph or Lynne, WFM initiated a nonjudicial foreclosure which Lynne, with the assistance of her mother, Carole, cured prior to sale, which was scheduled for March 31, 2004. Joseph quitclaimed on March 18, 2004, the property to Carole, who obtained a loan from Cornerstone to pay off WFM. The quit claim deed from Joseph to Carole was recorded on August 25, 2004. As the owner of record, Carole borrowed money from Cornerstone, paid off WFM and remains the maker of the note and grantor of the deed of trust. Lynne describes her interest in the property on Schedule A of her bankruptcy

schedules as an "equitable fee simple," with "naked legal title vested in Debtor's mother Carole Turville, by operation of Quit Claim deed dated March 18, 2004."

The Court infers from the foregoing facts stipulated to by the parties that Lynne's credit history prevented her from obtaining financing from a lender that could be secured by the property. *See* paragraphs 4, 9, 10, 11, 12, and 13 and *Korte v. U.S. (In re Korte)* 262 B.R. 464, 472-73 (8th Cir. BAP 2001) (Court may make inferences from the evidence). Yet Lynne benefitted from her mother acquiring the property from Joseph so Carole could borrow the necessary money to pay off WFM from the Cornerstone loan, especially as Lynne has continuously lived in the subject property from August 27, 1993 until the present. The Court further infers from the facts that the transfer from Joseph to Carole was intentionally made so Carole, being credit worthy, could obtain a loan from Cornerstone to pay off WFM because Lynne was not credit worthy, which may have also been the reason the Joseph did not quit claim the property to Lynne after the dissolution. The Court is mindful that other reasons may exist why Joseph did not quit claim the property to Lynne, such as his unwillingness to prepare or sign a quit claim deed, but in that event clearly Lynne under the terms of the Ex. D could have judicially enforced his obligation to convey the property to her or could have recorded Ex. D, which by its terms would have conveyed his interest in the subject property to Lynne. She, at least in the record before this Court, undertook no such action. No facts in the record suggest that Carole leases the subject property to Lynne, and no executory contracts and unexpired leases are disclosed on Schedule G of Lynne's bankruptcy schedules, and no provisions are contained in Lynne's confirmed chapter 13 plan regarding payments to Cornerstone.

The Court further infers that Carole is solely responsible for the loan payments on the

property at which Lynne resides. Lynne, further does not claim any homestead exemption in the property as no exemption is claimed on Schedule C, even though she claims an "equitable fee simple" interest in the property.

Given the foregoing discussion of the facts and the inferences made thereby, can Lynne avoid the deed of trust provided by Carole to Cornerstone on the basis that Lynne is the owner of the property which vested immediately prior to the entry of the decree of dissolution, even though no recorded instrument occurred? No. Although the division of property pursuant to Ex. D, was effective between Lynne and Joseph pursuant to MCA §§ 40-4-202 and 70-21-201, it was not effective against a good faith third party for value without notice. MCA § 70-21-301 defines conveyance as "every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to real property may be affected, except wills." MCA § 70-21-304 further provides "[e]very conveyance of real property . . . is void against any subsequent purchaser or encumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded." An encumbrance includes "taxes, assessments, and all liens upon real property." MCA §70-20-305. From the stipulated facts and the exhibits, Cornerstone had no actual or constructive notice of Lynne's interest at the time it recorded the deed of trust.

The facts in this case are distinguishable from the facts in *In re the Marriage of Bell*, 2000 MT 88, 299 Mont. 219, 998 P.2d 1163. In *Bell*, husband and wife conveyed property to husband's mother, for no value, and on the same day she reconveyed the property to them but the first deed was not recorded until two months before husband and wife filed bankruptcy, and

12

the second deed from mother back to husband and wife was not recorded until approximately three years later, obviously to keep the property out of husband and wife's bankruptcy case. Approximately three years after mother conveyed to husband and wife, they could not pay property taxes and again conveyed the property to mother, for no value. Mother obtained a loan secured by the property and paid off the taxes. She had not reconveyed the property to husband and wife when they file a marriage dissolution action. Husband and wife did not include the property in the dissolution proceedings and represented to the State court that they did not have any real property. Wife did not attend the dissolution hearing. Wife subsequently move to set aside the dissolution decree for fraud and requested an equitable division of the property held by Husband's mother. Husband and mother objected. The State judge set aside the decree for fraud on the basis that false findings of fact and conclusions of law had been submitted to the court and mother acquired the property for no value so MCA § 70-20-303, which provides "every grant . . . is conclusive against the grantor . . . except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien . . . that is first duly recorded," did not govern.

In the case *sub judice*, the subject property was part of the dissolution, Lynne did not pursue judicial assistance in acquiring a deed from Joseph or having the decree recorded thereby providing constructive notice to all persons that she owned the property. Lynne instead allowed the property to be conveyed from Joseph to Carole, who was credit worthy, while Lynne benefitted from the opportunity to remain in the property. The facts in the case *sub judice* are distinguishable from *Bell*.

In this regard, the rule stated in *Kirgan v. Kirgan*, 123 Mont. 34, 207 P.2d 557 (1949), is more applicable. The rule follows:

13

> A person, in dealing with another in respect to real estate, may rely on the record title to the property, in the absence of actual knowledge of the title in fact, or of facts sufficient to put him on inquiry in respect thereto. This protection extends to all persons who rely, and are justified in relying, on the record in dealing with real property. If this were not so, no one would be safe in purchasing real estate, or in loaning upon the strength of it as security. He who acts in reliance on the record has behind him not only the natural equities of his position, but also the special equity arising from the protection afforded everyone who trusts the record."

*Id*. at 38, 559. In *Kirgan*, the husband knew his co-owner had conveyed alleged "death deeds" to a third person, but did nothing to assert his rights or to prevent an innocent party from relying on the records. The complacent and unassertive husband lost the quiet title action to the third person. In the case *sub judice*, Lynne failed to assert her rights to acquire a recordable deed from Joseph and failed to record a certified copy of Ex D or to prevent Cornerstone from relying on the public records. Again, Lynne benefitted from her failure to assert rights as to assert such rights would have possibly prevented her mother, Carole, from obtaining the loan from Cornerstone that was necessary to pay off WFM. Additionally, Cornerstone for value, in good faith, and without any notice of Lynne's interest relied on the public record showing Carole as the fee simple owner of record and loaned to Carole money secured by a deed of trust duly recorded in the public record prior to Lynne asserting any interest.

Lastly, "[a]ny one appealing to the equitable jurisdiction and asking the aid of a court of equity whether that aid is such as could be obtained only in a court of equity, submits himself to the jurisdiction of the court and, in asking its aid, subjects himself to the imposition of such terms as well-established equitable principles would require." *Epletveit v. Solberg*, 119 Mont. 45,58, 169 P.2d 722, 729 (1946). In *Epletveit*, a co-owner, with the consent of the other owner conveyed land to a third party. Then an unrecorded, undisclosed written lease on the land with

another party predating the sale appears for which the purchaser has no notice. The lessee and the co-owner then initiated a quiet title action to eliminate the interests of the purchasing third party. The supreme court reversed the lower court and concluded that the purchaser's rights were prior to the lessee, whose interests where invalidated. By applying the equitable principles of "He who seeks equity must do equity" and "he who comes into equity must come with clean hands," the supreme court concluded

> . . . it is clear that the plaintiffs Epletveit and Flesch may not invoke the jurisdiction of a court of equity to perpetrate a fraud upon their neighbor Solberg nor deprive him of the fruits of his labor and industry in plowing, preparing and improving the land for which Epletveit had obligated himself to deliver a deed of conveyance. Solberg had deposited in the bank the balance of the agreed purchase price awaiting the time when the plaintiff Epletveit shall have performed his contract to quiet the title. Nothing further remained to be done by Solberg. The contract for the sale of the land being legal and Epletveit, having accepted and acknowledged receipt of a valuable consideration therefor, was in duty bound to perform.

*Epletveit*, 119 Mont. at 58-59, 169 P.2d at 729. The equities in the case *sub judice* do not favor Lynne. Joseph quitclaimed the property to Carole so she could obtain a loan secured by the property in which her daughter, Lynne, resided. Lynne was not credit worthy and she sought the credit worthiness of her mother. Lynne failed to assert any rights to have the title to the property placed in her name and failed to take an action to prevent Cornerstone from relying on the public record. Lynne enjoyed the opportunity to use her mother's credit worthiness to pay off one foreclosing creditor, WFM, and received a breathing spell from foreclosing creditors by Carole obtaining a new loan from Cornerstone. Lynne has not done equity in this instance, but rather wishes to take advantage of the situation by attempting to avoid the deed of trust which was previously necessary for acquiring the loan through her mother that was necessary to pay off a

foreclosing creditor. Cornerstone's deed of trust is not avoided.

The Court will enter a separate Judgment as follows:

IT IS ORDERED, ADJUDGED and DECREED that Judgment is entered quieting title in Lynne Marie Turville, to the following described property:

> Lot 4, excepting an area 3 feet in width along the southerly boundary of said lot, Block 3, VALLEYVIEW HOMES, SECTION 1, an addition to the City of Great Falls, Cascade County, Montana, according to the official map or plat thereof on file and of record in the office of the Clerk and Recorder of said County.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the note executed by Carole L Turville to Cornerstone Mortgage Company is by this Judgment assigned to Lynne Marie Turville, without further need of assignment and Cornerstone Mortgage Company shall remove Carole L. Turville from any loan documentation, accounts and ledgers and substitute Lynne Marie Turville as the maker of the note.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the deed of trust executed by Carole L Turville to Cornerstone Mortgage Company is by this Judgment assigned to Lynne Marie Turville, without further need of assignment and Cornerstone Mortgage Company shall remove Carole L. Turville from any deed of trust documentation and substitute Lynne Marie Turville as the grantor of the deed of trust.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the note and all of its terms and conditions held by Cornerstone Mortgage Company now referencing Lynne Marie Turville as the maker is fully enforceable and the terms and conditions of the deed of trust secured by the above described property now referencing Lynne Marie Turville as grantor is fully

enforceable.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the deed of trust now referencing Lynne Marie Turville as grantor and Cornerstone Mortgage Company as beneficiary is not avoided, but is fully enforceable.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Joseph P. Amato, a/k/a Joseph Peter Amato has no legal or equitable title or interest in the above described property; and that Carole L. Turville has no legal or equitable title or interest in the above described property.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that an this Judgment shall be docketed in the U.S. District Court's judgment docket; and that an exemplified Judgment shall be obtained by Plaintiff's or Defendant Cornerstone Mortgage Company's attorney from the U.S. District Court; and that such exemplified judgment shall be recorded by either attorney in the public records of Cascade County, Montana, as maintained by the Cascade County, Montana, Clerk and Recorder.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana